# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**EUVONDA NICOLE WILLIAMS**                                                       **PLAINTIFF**

V.                     **CASE NO. 4:10CV00055 JLH/BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration**                                          **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.**     **Procedure for Filing Objections:**

The following Recommended Disposition has been sent to United States District Court Chief Judge J. Leon Holmes. Any party may file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommended Disposition. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II. <u>Introduction:</u>

Plaintiff Euvonda Nicole Williams has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and for Supplemental Security Income benefits under Title XVI of the Act.  For reasons that follow, this Court recommends that the District Court AFFIRM the decision of the Administrative Law Judge ("ALJ").[1]

## III. <u>Procedural History:</u>

Ms. Williams filed her application for benefits on December 14, 2007.  She alleges she became disabled as the result of a car accident on May 3, 2007, that caused her back condition, headaches, numbness in her left foot and leg, and shoulder pain.[2]  (Tr. 77)

After the Commissioner denied Plaintiff's applications at the initial and reconsideration stages, Ms. Williams requested a hearing before an ALJ.  The ALJ held a hearing on January 22, 2009, and Ms. Williams appeared with her attorney Fritzie M. Vammen.  (Tr. 253-277)

---

[1] The Honorable Edward M. Starr, Administrative Law Judge.

[2] In various places throughout the record, the date of Plaintiff's accident is listed as either May 3 or 4, 2007.  In her disability applications, Plaintiff alleges an onset date of May 3, 2007.  (Tr. 55, 71)  She consistently alleged that the onset of her disability was caused by her car accident.  Accordingly, this Court will use May 3, 2007, when referring to the date of Plaintiff's accident.

2

At the time of the hearing, Ms. Williams was a 35-year-old female with a twelfth-grade education. (Tr. 83) She was 5'2" tall and weighed approximately 165 pounds. (Tr. 77) She had past relevant work as a general assembler. (Tr. 78-79)

At the hearing, the ALJ received testimony from Ms. Williams and vocational expert Montie Lumpkin ("VE"). On August 31, 2009, the ALJ issued a decision denying benefits. (Tr. 12-23) The administrative Appeals Council denied Ms. Williams's request for review on December 22, 2009. (Tr. 4-6) She filed the current Complaint for Review of Decision (docket entry #2) on January 27, 2010.

## IV.   Findings of the ALJ:

The ALJ followed the required five-step sequential analysis set out in the Social Security Regulations, 20 C.F.R. § 416.920 and 20 C.F.R. § 404.1520, finding that: (1) Ms. Williams had not engaged in substantial gainful activity since she filed her disability application; (2) she suffered from a "severe impairment" for purposes of Social Security Regulations; (3) she did not have an impairment, or combination of impairments, rising to the severity level of any impairment listed in Appendix 1 to Subpart P, Regulation No. 4; (4) she was unable to perform any past relevant work; but (5) she retained the residual functional capacity ("RFC") to perform a wide range of light work.[3] At step five, the ALJ

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

found that a significant number of jobs existed in the economy which Plaintiff was capable of performing.

Plaintiff contends the ALJ erred by: (1) failing to give her treating physicians' opinions controlling weight; and (2) making an erroneous credibility finding. The Defendant argues that the ALJ's decision is supported by substantial evidence because: (1) the ALJ considered the record as a whole before discounting the opinion of Plaintiff's treating physicians; and (2) the ALJ's error in evaluating Plaintiff's credibility, if any, was harmless error.

## V.    Legal Analysis:

In reviewing the ALJ's decision, this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g). This review function is limited, and the decision of the ALJ must be affirmed "if the record contains substantial evidence to support it." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). "Substantial evidence is less than a preponderance but enough so that a reasonable mind could find it adequate to support the decision." *Id.* Evidence that both supports and detracts from the ALJ's decision must be considered, but the decision cannot be reversed "merely because there exists substantial evidence supporting a different outcome." *Id.* "Rather, if, after reviewing the record, . . . it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, we must affirm the decision of the [ALJ]." *Young v.*

*Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted). Thus, the Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); 42 U.S.C. § 405(g).

    A.    <u>**Assessment of Physician Opinions:**</u>

Ms. Williams argues that the ALJ erred by rejecting the opinion of her treating physicians. Specifically, she believes the ALJ should have given controlling weight to her pain management specialist and neurosurgeon's Medical Source Statements. (Tr. 196-197; 213)

If the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the applicant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). The opinions at issue here are from Plaintiff's pain management specialist and neurosurgeon.

Ms. Williams's alleged disability began on May 3, 2007, the date of her car accident. She did not seek medical treatment at the time of the accident, but on May 7, 2007, she saw family practitioner Charles Howard, M.D., with complaints of back pain and headaches. (Tr. 151) Dr. Howard gave her Naproxen and prescribed heat and massage therapy. (Tr. 151) The next day, Ms. Williams underwent a CT scan of her head

and an MRI of her L-spine. The results of the CT head scan were normal. (Tr. 142) The MRI showed L5-S1 spondylolisthesis with spondylolysis, degenerative disk disease at L5-S1 with a moderate-sized posterior bulging disk, and effacement of the bilateral exiting L5 spinal nerves. (Tr. 143) Ms. Williams continued to see Dr. Howard for back pain and was referred to a neurosurgeon for evaluation. (Tr. 146-150)

On June 15, 2007, Ms. Williams saw neurosurgeon J. Michael Calhoun, M.D. (Tr. 154) Dr. Calhoun noted Ms. Williams's grade I spondylolisthesis and referred her for four weeks of physical therapy. She showed slight improvement with physical therapy, so Dr. Calhoun referred her for another four weeks of physical therapy. (Tr. 155) She showed no improvement, so Dr. Calhoun referred her to a pain management specialist. (Tr. 153)

On August 28, 2007, Ms. Williams saw pain management specialist. Butchaiah Garlapati, M.D. (Tr. 185-189) The initial examination showed lumbar spasm with limited flexion and extension. (Tr. 187) Dr. Garlapati also noted bilateral sacroiliac joint dysfunction. Ms. Williams was ADL (activities of daily living) independent. (Tr. 189)

Ms. Williams saw Dr. Garlapati about seven more times after this initial appointment, until the final recorded appointment on February 1, 2008. (Tr. 176-189) During this time, Plaintiff received one sacroiliac joint injection at the initial examination and another on September 11, 2007. (Tr. 182, 189) On September 24, 2007, Dr. Garlapati reported his assessment and plan to Dr. Calhoun. (Tr. 183-184) Dr. Garlapati

noted Ms. Williams's morbid obesity, poor core muscle strength, limited flexion and extension of the lumber spine, sacroiliac joint dysfunction, asymmetric gait, pes planus, and limited manual motor strength on the left side due to pain. (Tr. 183) Dr. Garlapati's plan was to schedule bilateral sacroiliac joint injections, with trigger point injections as needed, refer Plaintiff to physical therapy for modalities, and custom mold insoles for her pes planus. (Tr. 184)

On October 10, 2007, Ms. Williams reported increased pain, but too much sedation from her pain medications. (Tr. 182) Dr. Garlapati decreased her hydrocodone dosage, refilled her flexeril, and scheduled a lumbar epidural steroid injection, which was administered on October 22, 2007. (Tr. 181-182)

Dr. Garlapati noted that on November 5, 2007, Ms. Williams returned to work for a half day, but quit because she could not continue. (Tr.181) Dr. Garlapati's plan was then for Plaintiff to return to work on light duty. (Tr. 181) At her next appointment, on December 3, 2007, Ms. Williams reported no new complaints and improved condition. (Tr. 179) Dr. Garlapati refilled her hydrocodone and flexeril prescriptions and noted that Plaintiff's employer could not accommodate light duty. (Tr. 179) At Ms. Williams's final appointment with Dr. Garlapati, on February 1, 2008, he noted Ms. Williams had no relief from pain and was unable to perform day-to-day activities. (Tr. 177)

On February 11, 2008, Dr. Garlapati completed a Medical Source Statement regarding Plaintiff's limitations. (Tr. 196-197) Dr. Garlapati opined that Ms. Williams

could lift or carry 10 pounds frequently and 10 pounds occasionally [sic]; that she could stand or walk continuously for thirty minutes without a break, and less than one hour in an eight-hour day with usual breaks; that she could sit for fifteen minutes without a break, and for a total of one hour, in a typical eight-hour workday.  (Tr. 196)  According to Dr. Garlapati, Ms. Williams's ability to push or pull was limited by low back pain (Tr. 197), and she could never crawl, but she could climb, balance, stoop, kneel, crouch, reach, and handle occasionally or frequently.  In addition, Dr. Garlapati opined that Ms. Williams should avoid exposure to hazards and heavy equipment.  (Tr. 197)

On February 27, 2008, Dr. Calhoun noted that Ms. Williams continued to have low back pain.  (Tr. 218)  He stated Ms. Williams wanted to continue her disability until April 21.  Dr. Calhoun noted Ms. Williams would return to his office in April, when he hoped to release her to a regular job.  (Tr. 218)  In the interim, Dr. Calhoun referred her back to physical therapy.  (Tr. 218)  At the initial evaluation for physical therapy on March 6, 2008, the therapist noted Ms. Williams's limitations secondary to pain, her prior lack of pain or limitation in ambulation, activities of daily living, work, or recreation, and her excellent potential to reach and maintain her prior level of functioning.  (Tr. 233-235)

On April 23, 2008, Ms. Williams returned to Dr. Calhoun.  He noted she was undergoing physical therapy and doing fairly well.  (Tr. 217)  At that appointment, Dr. Calhoun noted Ms. Williams would return to work on May 9th without specific restrictions.  (Tr. 217)

An MRI conducted on May 12, 2008, showed no progression in Plaintiff's back condition. (Tr. 208-211) According to Dr. Calhoun, Ms. Williams's cervical spine showed no significant abnormalities, her thoracic spine was normal for her age, and her lumbar spine showed continued grade I spondylolisthesis at L5-S1.[4] (Tr. 216) Although Dr. Calhoun did not have film of Plaintiff's previous MRI, he did not think her spondylolisthesis had progressed. (Tr. 216) Dr. Calhoun stated, "[b]asically [Plaintiff] continues to say she cannot return to work. I do not know what else to do for her. We will keep her off work indefinitely." (Tr. 216)

On July 31, 2008, Dr. Calhoun completed a medical statement form prepared by Ms. Williams's attorney. (Tr. 213) In the medical form, Dr. Calhoun stated that Ms. Williams had limited motion of the spine and an inability to ambulate effectively. She could stand for sixty minutes at a time and sit for sixty minutes at a time. She could occasionally lift twenty pounds and frequently lift ten pounds. She could occasionally bend or stoop. Dr. Calhoun opined that Plaintiff suffered moderate pain and commented that all of the restrictions were based solely on Plaintiff's complaints on pain. In addition, Dr. Calhoun stated that Plaintiff could work eight hours per day. (Tr. 213)

---

[4] Grade I is the least severe grade rating for spondylolisthesis.

Ms. Williams argues that Dr. Calhoun's and Dr. Garlapati's opinions were consistent with each other and that they both assigned her an RFC below sedentary.[5] When viewing the medical record as a whole, this is not accurate.

Dr. Calhoun released Plaintiff to her old job without specific restrictions. (Tr. 217) Plaintiff's job required her to walk ten hours each day.[6] (Tr. 76) She had to stoop, or bend down and forward at the waist for seven hours a day. In addition, she was required to frequently lift fifty pounds or more. (Tr. 76) The requirements of the job Dr. Calhoun released Plaintiff to without specific restriction was essentially required medium to heavy exertion.[7] The weight limitations in Dr. Calhoun's medical statement reflect "light" work capacity. He also stated that Plaintiff could work eight hours a day. Importantly, however, Dr. Calhoun noted that the listed restrictions were based solely on Plaintiff's allegations of pain, and not on his own opinion of Plaintiff's abilities. When

---

[5] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

[6] Plaintiff worked four days per week, ten hours per day. (Tr. 75)

[7] Heavy work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up 50 pounds." 20 C.F.R. § 416.967(d). Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up 25 pounds." 20 C.F.R. § 416.967(c).

asked for his own opinion of Plaintiff's pain, Dr. Calhoun stated that he thought she suffered moderate pain.[8]  (Tr. 213)

As for Ms. Williams's pain management doctor, Dr. Garlapati, his medical source statement indicated Plaintiff was extremely limited physically.  (Tr. 196-197)  Less than three months prior to completing the statement, however, Dr. Garlapati had noted that Ms. Williams's medical plan was to return to work on light duty.  (Tr. 181)  At the very next appointment, Dr. Garlapati noted that her condition had improved since her last visit, but that her employer could not accommodate light duty.  (Tr. 179)  Dr. Garlapati's medical plan at that point was to refill Plaintiff's hydrocodone and flexeril prescriptions and to complete disability forms, as Plaintiff was "not able to work full duty."  (Tr. 179) Ms. Williams's most recent MRI, taken three months after Dr. Garlapati completed his medical statement, showed no progression in her spondylolisthesis.  (Tr. 208-211, 216)

Ms. Williams argues that the only evidence contrary to her treating physicians' medical statements was provided by a consultative psychologist, who found that she was exaggerating and malingering.  (#10, p. 8, 10)  This, too, is not entirely accurate.  First, as noted, both Dr. Garlapati and Dr. Calhoun provided evidence supporting the ALJ's decision.  Second, Plaintiff inaccurately portrays the records and evidence at issue.

---

[8] The form prepared by Ms. Williams's attorney asked Dr. Calhoun to circle appropriate answers.  The possible available responses to indicate his opinion of Ms. Williams's pain were: "none", "mild", "moderate", "severe", or "extreme".  (Tr. 213)

The consultative psychologist Ms. Williams refers to clearly found evidence that Plaintiff was exaggerating and malingering.[9] (Tr. 156-162)  Contrary to the Plaintiff's statement, the psychologist did not have any of Ms. Williams's prior clinical records, as Plaintiff alleges. (Tr. 156)  The reason for this, however, was because Plaintiff had only recently sought medical treatment for her alleged mental impairments. (Tr. 157)  Even more importantly, the psychologist was asked about Ms. Williams's mental, but not her physical, impairments. (Tr. 156-162)  Neither of the medical statements provided by Dr. Calhoun and Dr. Garlapati addressed mental impairments.  The physical consultative assessment (Physical Residual Functional Capacity Assessment) provided by separate consultative physicians did not mention exaggeration or malingering. (Tr. 198-205)

Although Alice Davidson and Dr. Jerry Thomas's credentials are not provided in detail, it does not appear that either is a psychologist.  Further, stating that the consultative physicians did not have "the benefit of her medical records documenting objective underlying causes of pain. . ." appears to be untrue. (#10, p. 8)  Notes from medical records, including CT and MRI results, were quoted at length to support the physical assessment. (Tr. 205)

---

[9] The psychologist noted, "[Plaintiff] is a high school graduate but said she could not name any presidents, any states that border Arkansas, or any large cities other than Little Rock.  Her responses to digit span, recall of objects, and similarities were not credible." (Tr. 162)

At the hearing, Plaintiff testified that she could stand and walk for thirty minutes at a time. (Tr. 261-262) She testified that she could sit in a straight-backed chair for thirty minutes without break, which is twice as long as Dr. Garlapati suggested. (Tr. 196, 264) She stated she could occasionally lift and carry twenty to twenty-five pounds, which is more than twice the lifting capacity noted by Dr. Garlapati; it is consistent, however, with the weight limits suggested by Dr. Calhoun and the ALJ.

It appears from the record that Ms. Williams did not seek treatment from Dr. Garlapati at any point after he completed the Medical Source Statement on February 11, 2008. On January 22, 2009, the date of the administrative hearing, Plaintiff could not remember the last time she had seen Dr. Garlapati. She testified that she no longer saw him because he had done everything he could for her. (Tr. 275) There is no record that Ms. Williams sought relief from an alternative pain management specialist, although she allegedly continued to suffer disabling pain. Dr. Calhoun, however, believed Ms. Williams suffered moderate pain and did not think her back condition was serious enough to consider surgery. (Tr. 213, 269)

On September 18, 2008, Plaintiff's physical therapist discharged her for the stated reason of "goals met." (Tr. 230) One of the goals was for Plaintiff to return to work with limitations on lifting and heavy duty, with only mild pain. (Tr. 231) The physical therapist noted that, at the time of her discharge, Ms. Williams had cancelled her last several visits due to pain and that her current condition was unknown. (Tr. 231)

Ms. Williams alleges that her family practitioner, Dr. Howard, "opined that Plaintiff [was] unable to work due to pain and limitations in standing." (#10, p. 10)  This Court has thoroughly reviewed Dr. Howard's records and cannot find the alleged opinion. Instead, the record shows that Dr. Howard referred Plaintiff to Dr. Calhoun for her complaints of back pain.  (Tr. 146-152)  Dr. Howard's records also show that Ms. Williams had some difficulty returning to work after suffering a scalp injury in 1995.  (Tr. 152)

The record Ms. Williams cites as Dr. Howard's opinion apparently is a letter from Dr. Stephen Long instead.  (Tr. 252)  There is no record, however, of when Dr. Long treated Plaintiff, the length of treatment, the reason for treatment, or any objective support for the opinions stated in the letter.  The letter provides little, if any, useful information in determining Plaintiff's RFC.  Moreover, the letter was written almost ten months after the administrative hearing and more than two months after the ALJ's decision.  According to a memorandum provided by Plaintiff's attorney, Dr. Long was not a treating physician at the time of the hearing.  (Tr. 120)

"It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).  In this case, some of Dr. Garlapati's stated restrictions conflict with his own records.  Ms. Williams's apparent rapid decline from November 19, 2007 (when Dr. Garlapati thought Plaintiff

14

could return to work on light duty) to February 11, 2008 (the date of Dr. Garlapati's medical statement) conflicts directly with the results of Ms. Williams's most recent MRI that showed no change in her condition.

As Dr. Calhoun noted, the back condition did not progress. He also noted that the grade I spondylolisthesis was probably present before Plaintiff's car accident. (Tr. 155) In addition, some of the restrictions stated in Dr. Calhoun's medical statement, which were based solely on Ms. Williams's complaints of pain, conflict directly with his clearing Ms. Williams to return to medium-to-heavy work two months only two months before he completed the medical statement.

Given the inconsistencies in the record, the ALJ properly declined to give only those opinions most favorable to Plaintiff controlling weight. To do so, the ALJ would have had to ignore other statements and records provided by the very same physicians. Accordingly, the ALJ's decision to give Dr. Garlapati's and Dr. Calhoun's medical source statements less than controlling weight was not error.

    **B.**    <u>**The ALJ's Credibility Determination:**</u>

Under 20 C.F.R. § 416.929 and 20 C.F.R. § 404.1529, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms are consistent with the objective medical evidence. The ALJ is in the best position to gauge the credibility of

testimony, and those credibility determinations are entitled to some deference. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). An ALJ's conclusions may be upheld if the record as a whole supports them. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

Plaintiff argues the ALJ erred by erroneously concluding Plaintiff returned to work after the onset of her alleged disability. Plaintiff states that the records provided to the Appeals Council confirm "that the majority of earnings were coded as something other than 'regular pay' earnings." (#10, p. 11) (Tr. 251)

It appears the ALJ was aware of this when he found that Plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability. (Tr. 14) Even though for three months of the alleged period of disability Plaintiff's earnings exceeded the amount that signals substantial gainful activity, the ALJ noted that Ms. Williams received short-term disability and sick-leave payments from her employer. (Tr. 14-15)

Plaintiff takes issue with the ALJ's credibility determination, where he found that Plaintiff provided "inaccurate information" regarding her return to work. (Tr. 19) At the administrative hearing, the ALJ asked Ms. Williams repeatedly whether she had returned to work at all since her accident. (Tr. 270-273) Ms. Williams replied that she had not. The earnings report, however, appears to show that Plaintiff did return to work on several occasions for a couple of hours or less. (Tr. 251) Multiple medical records also reference Plaintiff's brief return to work. (Tr. 168, 181) It appears the ALJ accurately noted this discrepancy when discussing Plaintiff's credibility. (Tr. 19) Even if the ALJ erred,

which is not apparent from the record or briefs, the ALJ provided numerous alternative grounds for questioning Plaintiff's credibility. (Tr. 15, 17-20)

When discrediting a plaintiff's subjective complaints, the ALJ must consider those subjective complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). *Polaski* requires an ALJ consider: (1) the Plaintiff's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id.* at 948. Here, the ALJ adequately considered the record when determining Plaintiff's subjective complaints were not credible to the extent they limited her to less than a wide range of light work. (Tr. 17-20)

In addition to the *Polaski* factors, the ALJ noted that Ms. Williams was receiving unemployment benefits, which required her to indicate that she was ready, willing, and able to work. (Tr. 19) The ALJ also noted that both Dr. Garlapati and Dr. Calhoun released Plaintiff to work, with Dr. Garlapati releasing Plaintiff to light duty and Dr. Calhoun releasing Plaintiff to her old job without restrictions.

The ALJ found that all of Plaintiff's treatment was conservative, her grade I spondylolisthesis existed before her motor vehicle accident, and it had not progressed. (Tr. 18) The ALJ also noted that there was no record of treatment from either Dr. Garlapati or Dr. Calhoun after they completed their respective medical source statements.

17

It appears from the record that Plaintiff did not seek treatment from Dr. Garlapati at any point after he completed the Medical Source Statement on February 11, 2008. On January 22, 2009, the date of the administrative hearing, Plaintiff could not remember the last time she had seen Dr. Garlapati. When the ALJ asked Plaintiff why she had not seen her pain management doctor for almost a year prior to the administrative hearing, she responded that Dr. Garlapati had done all he could for her. (Tr. 275) Yet Plaintiff's alleged disability was based almost exclusively on pain. There was no record of Plaintiff's seeking relief from an alternative pain management specialist. In addition, the ALJ noted there was no record of Plaintiff seeking treatment from her neurosurgeon, Dr. Calhoun, after May 29, 2008. (Tr. 18)

The ALJ noted that Dr. Ott suspected Plaintiff of exaggerating her symptoms. (Tr. 15) Exaggeration of symptoms is a factor to be weighed in evaluating subjective complaints of pain. *Jenkins v. Bowen*, 861 F.2d 1083, 1086 (8th Cir. 1988). In addition, Plaintiff's failure to consistently seek treatment weighs against her allegations of extreme limitations based on pain. *Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) (failure to seek treatment may indicate the relative seriousness of a medical problem).

This Court has no doubt that Ms. Williams suffered some level of pain. The ALJ acknowledged Plaintiff's allegations of pain and limited physical functioning and found that her pain was limiting. It appears, however, that the ALJ credited Plaintiff's

subjective complaints only to the extent that her pain limited her to light work. This Court cannot find error in this finding.

## VI.    Conclusion:

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, as well as the medical and other evidence. There is ample evidence on the record as a whole to support the findings of the ALJ in this case. Accordingly, the Court recommends that the District Court affirm the Commissioner's decision and dismiss Plaintiff's complaint with prejudice.

IT IS SO ORDERED this 27th day of January, 2011.

_____
UNITED STATES MAGISTRATE JUDGE